Good morning your honors and may it please the court my name is Ron Sung with the Federal Public Defender's Office and I represent Christopher O'Neill. I'd like to reserve two minutes for rebuttal please. Our appeal concerns two claims and I'd like to start with the second one the Brady claim. O'Neill's parole officer Brent Cooper committed misconduct. He falsified O'Neill's drug test. Counsel just given the time I'd like to just ask you kind of a question that I think cuts to the heart of this. I think we've read the facts on this and the Brady claim does raise some some serious questions. As I boiled it down and correct me if I'm wrong and if we need more analysis than this tell me but it seems like what it ultimately boils down to is given the fact if he had known if your client had known that that the parole officer was under investigation been doing this illegal activity it would have caused him to file a motion to suppress and so but we still have to determine that based on whether there was a reasonable probability that the motion to suppress would have been successful. Help me understand your best argument for why you believe that a motion to suppress would have been ultimately successful or there there was a reasonable probability of that. Yes your honors under Nevada law Cooper needed a reasonable suspicion that a parolee was either engaging in crime or violating his parole prior to searching and detaining him and if you had the letter and you had any of this Brady information a lot of it was continually suppressed after even up to the point of the Nevada Supreme Court denying this claim. If trial counsel had all this information he would have raised hold on when you're saying the letter let's I guess we do need to go back into the facts a little bit because the letter the letter came out after that would come out after he was actually convicted right? After the sentencing? It's between so I should say this your honor the letter was drafted and written between the correct your honors late into O'Neill's direct appeal the state finally made the letter available but that letter your honor was just a partial disclosure that letter merely stated that Cooper had falsified a drug test in O'Neill's case and based on that letter O'Neill you know moved for a new trial alleging the Brady violation but missing from that letter were critical details the date of never could have been produced prior to trial sufficient to allow for a motion to suppress to be well at least the motion to suppress your arguing should have been filed no they started investigating him in April be an April well before the trial yes that is your that would be your materiality argument that that should have been disclosed and since Cooper further along with that since Cooper arranged actually for the seizure of Mr. O'Neill and the subsequent search you would your argument would have to be that the motion to suppress would have suppressed all the fruit of the poisonous tree yes everything that occurred from Cooper's actions and also the fact that it was so extremely close the the negative with all the other allegations the negative test that never and this arrest on September 22nd the proximity in time would be a concern as to materiality is that correct yes also point out the trial started on June the 6th of 2005 four days before trial started on June the 2nd of 2005 Cooper had actually confessed he had been confronted by internal affairs with damning evidence that he committed misconduct and when confronted Cooper could explain himself and this is an ER 1643 and I also like to point out that on the second day of trial so while the trial was happening internal affairs actually interviewed Adam Summers and Adam Summers is Cooper's partner the interview report from internal affairs noted Summers was going to O'Neill's trial right after this internal affairs interview and that's on ER 1639 therefore Cooper should disclose Summers knew that there was an investigation I guess look there's no question that that we've got a problem with with the probation officer everybody recognizes that we also have a problem with the fact that at least some information wasn't properly disclosed I think the question is I'm still wanting to hear whether whether there would have been any other basis for the stock because you know everything everything kind of comes back to saying that well the only reason why this was done was because of officer Cooper but the standard for stopping someone who is a parolee is not very high and he he had missed some check-ins and so I'm wondering why that wouldn't have been enough even setting aside officer Cooper's involvement in this which is a given that that's problematic why wouldn't have been enough that there would have been reasonable probability to stop him or not even a reasonable suspicion I should say to stop him even separate and apart from officer Cooper's involvement your honor to respond to that respondents brief actually discussed how other officers allegedly described reasons to detain O'Neill the respondents are wrong O'Neill did not run I think there was an allegation in the respondents brief that O'Neill ran but according to the record Michael Brown who was the leader of police officers actually detained him he testified very clearly that O'Neill did not run there's also the allegation that Cooper's partner Adam Summers alleged that you know O'Neill was maybe avoiding parole officers but Summers admitted that he wasn't responsible for O'Neill this was Cooper's case and moreover Summers even admitted that he wasn't at all familiar with O'Neill's so clearly again Cooper was a bad actor no one's here trying to defend Cooper but if he conveyed it maybe maybe he did it for the wrong reason maybe there is something to this extortion claim but if he conveyed correct information to other officers to say hey and and that information that he missed certain check-ins would have been enough for reasonable suspicion to detain him setting aside the running away or not why isn't that enough to just say look the stop was appropriate yes there were some improper things that were done here but there was still a reasonable suspicion based on correct information that officer Cooper had conveyed to to perform the stop and your honor just to answer that reasonable suspicion to detain Cooper was wholly dependent on O'Neill was wholly dependent on Cooper I think that's been all the officers agreed that it was Cooper that ordered the arrest but whatever Cooper would have testified regarding his reasonable suspicion would have been impeached as a suspect motive the trial counsel was subpoenaed him to testify and he would have said the same thing he said to the I think the impeachment is a harder issue for you because I mean ultimately if the evidence came in I think it's pretty hard to say he wouldn't have been convicted I mean the forged checks were found your best argument is they never should have been found in the first place and that's what I'm trying to drill down on is you know if there were some improper motivations is that what we focus on and just say okay that means that the stop was improper from the get-go or do we say look there might have been some improper motivations but the information that Cooper conveyed was accurate that he had missed some check-ins and because he'd missed some check-ins that's enough to justify the stop well whatever Cooper would have testified it was highly suspect I mean he inexplicably helped O'Neill pass a drug test he risked his career he risked his reputation and then two weeks later Cooper busted O'Neill for no apparent reason the trial court found those they never testified to any apparent reason and what's more strange is that Cooper couldn't even explain why he did that and so if you ask the question of if he was if Cooper was asked a question on the stand well two weeks before this arrest you ordered you falsified a drug test and you can't explain why you did it and then two weeks after you arrest O'Neill and you can't explain you couldn't you probably can't explain why you did that either you're saying on the stand in context of the motion to suppress not for the actual trial yes your honor and with that I'd like to reserve the rest of my time for thank you and I judge Jack may have had a question I don't I'm fine thanks mr. Bungard good morning your honors my name is Michael Bungard from the Nevada Attorney General's Office representing respondents in this matter I'll address the Brady do you contest that you had a duty and failed to turn over Brady information before trial well your honor I believe opposing counsel cited the fact that the the state did stipulate that the first two prongs of Brady were met only materiality was in question materiality was in question your honor yes the other two again the other two prongs of Brady of the three you as the state has stipulated that that's correct that they had the material and they had an obligation to turn it over and did not and I would I would agree with that that's fine it doesn't resolve the case I just wanted it I just want to declare and I would agree with to that with the caveat that it appears that the proper time to turn the evidence over would have been when the sustained finding of guilt was because I don't believe that there's any established law that merely an investigation results in a duty to disclose and I would draw I actually think that the Ninth Circuit has said I mean that that's one of the issues here I because I before I'd read some of the Ninth Circuit case law I would have thought you wouldn't have had a duty to turn it over until the investigation was concluded but that doesn't appear to be consistent with Ninth Circuit case law that has said even when there's you know a reason for investigation you have to turn over that information now what you wouldn't have had to turn over obviously is the letter from August because you couldn't have turned over a letter that hadn't been written before trial but you would have at least had to turn over the the position that he was being investigated which could have caused you know the defense team to either ask for a continuance or you know investigated on their own so they may have ultimately come up with the information that was ultimately disclosed in the August letter but and I I would agree with you to the extent that the Ninth Circuit case law is a reasonable extension of clearly established law even if there was a duty to turn over investigation material I think officer Summers testimony at the evidentiary hearing suggests that there was no prejudice with regards to first of all the fact that was there a basis for the stop officer Summers testimony was yes it was officer Cooper's parolee yes I didn't know enough a lot about the case but he testified the two pretty important facts that discredited mr. O'Neill's testimony at the evidentiary hearing the first was the fact that O'Neill testified upon their first meeting that Summers and Summers at one point started wandering around the residence where he was living and then at that point there was allegedly a transaction involving $500 Summers testimony at the hearing was number one I never had either one of them out of my eyes eyesight and the reason I was there was because of the fact that mr. O'Neill was deemed a high-risk person and that was his whole purpose for being there so I didn't have them out of my view at any point I never saw anything exchanged between the two and I never overheard anything discussed about any money involved secondly with regards to the date in question when mr. O'Neill was stopped officer Summers testimony was again I didn't know much about the case but there were some things that didn't add up in my opinion first of all that mr. O'Neill said he needed to reschedule because of the fact that his truck was broken down in need of repairs I'm sorry when was that said and to whom that was at the evidentiary hearing but that he was testifying about the day when they encountered O'Neill and when mr. O'Neill's arrest occurred so mr. mr. O'Neill told mr. Summers directly that no I'm sorry it wasn't Cooper that that's the issue is that if Cooper started this whole process that's that's the real concern and that may that that's the materiality concern information about O'Neill's non-compliance came directly from Cooper I believe and I could be misquoting the testimony but I believe he checked some information in Summers testified to the fact that well the case management entries were made by Cooper I believe he said some of them were made by Cooper some of them were made by the people that O'Neill called in to report to because even O'Neill testified that he didn't talk with Cooper all the time that he talked with a number of people when he was rescheduling his appointments but counsel let's assume that Cooper let's assume that the extortion theory was correct and Cooper was extorting O'Neill and he didn't get a payment from O'Neill and so he decided to turn him in and he has the goods on O'Neill say say that it was correct information that was passed on or a mixture of correct and incorrect information is the fact that there was an extortion beforehand doesn't that just raise a suspicion about the entire communication or is your position that even if there had been an extortion and even if Cooper had been you know improperly motivated once that information was conveyed Summers could you know run with it and if he had another basis that was okay if I can break that into two parts your honor first of all there's a lot of evidence in the record that assumes that the extortion wasn't valid the exchange between or the first appearance where there's conflicting testimony between officer Summers and mr. O'Neill first of all secondly the fact that O'Neill himself submitted to a polygraph examination and the only part of the whole investigation that was found unsubstantiated were mr. O'Neill's allegations that Cooper was extorting money and the record showed that mr. O'Neill's answers during that whole exchange regarding extorting money were deceptive so actually no that it didn't I don't think they didn't call him deceptive they called it something else looking at the polygraph report okay I may be misspeaking on that but I just read it again last night my recollection judge Jack is that it was deceptive but okay so even if it was an extortion I think that there's at least enough basis to suggest that Cooper was improperly not not by purposes of justice or you know and and so do we just strike down everything because of that or do we just is there a way to carve this out I mean once Cooper acts and causes Summers to look at it I mean Summers wouldn't have been looking at O'Neill but for Cooper's suggestion to do so right that that's I was that he looked at some of the reports found that the reason O'Neill gave for not appearing was that there were problems with his vehicle and I can't remember if the information came from but I guess that's my question is that let's accept your argument that Summers eventually came up with an independent reason to investigate or and stop stop O'Neill the fact that Cooper suggested it in the first place and there's pretty much everybody agrees that Cooper was a bad guy doesn't that just invalidate the whole thing I don't believe so your honor and I do you want me to fill in the facts but yeah no I think that's what at least for me that's what I'm struggling okay so filling in the facts there I believe Summers testimony at the evidentiary hearing was that part of his investigation or part of his personal knowledge was that it seemed fishy to him that O'Neill was telling them that he couldn't report yet his vehicle broke down and I believe the testimony was a couple blocks away from where the parole and probation office was in Reno so ROP detectives notified Cooper that he was in the area they went to look for him Summers testimony was they entered the casino they saw mr. O'Neill gambling and then at that point the testimony was that it appeared that he noticed us as soon as we noticed him and he took off in the opposite direction and he said in my mind coupled with what I knew ahead of time that was enough to stop him based on the reasonable suspicion standard because it was it was clear in his mind I give you but my again it comes back to the core issue of even that never would have happened arguably had Cooper not tipped off O'Neill O'Neill never would have seen him in the casino even assuming it was true that O'Neill tried to run away and never would have happened and that's what I'm struggling with is how how I mean do we just say the whole thing's tainted or can we start to parse out you in pursuing this and the rest of it's okay because there was reasonable suspicion okay going obviously I'm beyond my time but I think if you parse out everything as far as Cooper's involvement like the Nevada Supreme Court did when they talked about the impeachment issue you had this information that Summers had number one that there was information that reported the third person's that Coop O'Neill failed to report because he's his reasoning being that the truck was broken down ROP reported that the truck was broken down a couple blocks away from where he would have reported that to the extent that creates suspicion to look they went out and look for him Summers again taking Cooper and that would have been an end of Cooper's yes your honor I think you can I think you can come up with that theory independent of anything that Cooper would have added and at that point Summers going into the casino seeing mr. O'Neill taking off in the opposite direction without any of Cooper saying hey we need to stop this guy because of this he went O'Neill was already under investigation or being surveilled by ROP officers because of the fact that he was considered a high-risk offender and I can't remember which detective at the evidentiary hearing explained that theory or the process by which he's on that status but it was an committee independent of the police detectives themselves so if that in your honor's mind suffices to I guess the completely divest officer Cooper from the facts of the case that I believe your honor there is still a basis for the stop on the with that I will unless there's any other questions I will submit do you do you agree that the entire expedition on that September 22nd day was at the behest of Cooper to the extent that that this is it's not to the extent just the entire expedition was started by Cooper I wouldn't I wouldn't say a hundred percent your honor well whose idea was it then you had the information in the record that someone whose idea was it to get to go out that day wasn't it not Cooper's according to the record I believe I believe it was because of the fact that the was it not Cooper's idea your honor I believe it was the ROP detectives who notified PMP that the was in the vicinity of the PMP offices after Cooper well never I think the records I think there's a record on that thank you sir sorry I was pushing on that no your honor I think it's for a question and I was trying to get your honor the answer right absent other questions mr. song you have time for rebuttal thank you I just want to I want to ask you a I get it in so we've got to review this case under the Ed press standard right so we're not on direct review we're on collateral view and so we have a much more deferential standard of review and I think as everybody knows that this case comes down to materiality which is defined as a reasonable probability that had the information been disclosed the outcome would have been different what I struggle with in this case is the information that the defense didn't get the defense knew other than a conclusion of the investigation this is not a scenario where the defense had no idea that this probation officer was engaged in back that activity he absolutely knew it because he was directly involved with it and yet he made a choice not to raise an argument with that knowledge challenging the basis for this stop so why is the Nevada Supreme Court unreasonable and saying not material when this defendant knew the key information and chose not to act on it you are an answer to that question I think it would have been very difficult for O'Neill to make an allegation against a peace officer without any corroborating information he wanted to testify that there was extortion allegation but without any proof from internal affairs I don't think his attorney would have been wise to try to challenge the testimony of a peace officer like that and I just want to go back to the facts really quick there was some confusion on that Summers didn't come up with the reason to detain him it was Cooper all three officers agreed on that point the information from any other just to be clear on that and we'll give you a little bit more time but clearly Cooper instigated this yes sir and so I but Summers came up with additional information that Cooper hadn't provided after Cooper instigated it that would have supported the stop would you agree with that I don't agree with that at all your honor Summers admitted he had no idea about this case he was just there as the partner there's that that car incident that respondents referred to so the arrest happened on September 22nd September 21st O'Neill was supposed to check into parole he called in a supervisor answer the phone he said my car is broken down so I need to reschedule for the next week so the car nothing to do with the car broken down and nothing to do with the detention on the next day so that was purely Cooper was just saying I I just want to I want to detain this guy and he ordered Reno Police Department to do so so if there's nothing else around I just like to ask this court to overturn the lower court's decision and grant relief because the Nevada Supreme Court's decision on this was unreasonable thank you thank you to both counsel for helping on this case the case is now submitted
judges: Jack, Nelson, Hunsaker